Citizens' Savings, Building & Loan Ass'n v. Ruhl.

## Citizens' Savings, Building and Loan Association, of Normal, Illinois, v. Jesse F. Ruhl.

1. BUILDING AND LOAN ASSOCIATIONS—*Power to Withdraw Funds from the Treasury for Deposit Elsewhere.*—A building and loan association is without power to lawfully withdraw its funds from its treasurer and place them in the custody of another.

2. SAME—*Officers' Power to Make Contracts.*—The president and secretary of a building and loan association are wholly without power to make a contract for the association to withdraw its funds from the custody of the treasury and place them on deposit elsewhere.

3. SAME—*Members Charged with Notice.*—A member of a building and loan association is charged with notice of its charter and of the powers of its officers. As such member he is charged with knowledge that the directors alone can contract for the association.

**Memorandum.**—Action of assumpsit. In the County Court of McLean County; the Hon. C. D. MEYERS, Judge, presiding. Declaration, common counts; pleas, general issue and payment; trial by jury; verdict and judgment for plaintiff; defendant appeals. Heard in this court at the November term, 1893. Reversed and remanded. Opinion filed April 28, 1894.

### STATEMENT OF THE CASE.

The appellee contracted with the appellant association for a loan of $1,000, executed and delivered to the association his note and mortgage securing that sum, but insisted that the association only paid $477.25 of the amount. He obtained judgment in the County Court in this, an action of assumpsit, for the alleged balance remaining unpaid. This is an appeal from that judgment. It appears from the evidence that, while the appellee was engaged in the construction of a dwelling house upon a lot belonging to him in Normal, he found it necessary to borrow money to pay for labor performed and material furnished and to complete the building. He inquired of the president and secretary of the appellant association, as to the probability of getting a loan from its treasury. These officials felt confident that the association could supply the funds, if the security offered was acceptable, and so expressed themselves to the appellee. He

was anxious to know whether he could get at least $200 or $300 soon, and they told him that they had no doubt but that he could and could get the balance from time to time as the building progressed toward completion. The appellee subscribed for the requisite number of shares of the capital stock of the association (as its loans could only be made to stockholders), and applied in pursuance of the charter and by-laws of the association, for a loan of $1,000.

Appellant's security committee examined appellee's lot and building and reported that it constituted satisfactory security for the amount desired. The loan was approved by the association and the appellee so notified. On the 2d day of March, 1893, he executed and delivered to the association his note for $1,000, together with a mortgage upon the lot to secure its payment, and the association, by its secretary, delivered to the appellee its warrant or order, signed by its president and secretary, directed to its treasurer, directing the latter official to pay to the appellee or his order, the sum of $1,000, the amount loaned, in full. W. H. Schureman, the secretary of the appellant association, was also engaged in banking in Normal, under name and style of W. H. Schureman & Co. The appellee indorsed his name upon the back of the warrant which the association had drawn in his favor upon its treasurer, and left it with Schureman, who received it as a deposit in his bank by the appellee. An account was opened with the appellee by the bank, and he credited with a deposit of $972.45, the amount of the warrant or order, less $27.35, which had been deducted to pay dues, premiums, etc., to the association.

The cashier of the bank presented the order so indorsed to the treasurer of the association and received payment thereof in full. On the 31st day of March, the appellee signed a check drawn upon the bank of Schureman & Co., for $200, payable to himself, delivered it to Schureman and received that sum of money, and on the 2d day of May drew a second draft upon the bank payable to himself for $250, presented it to the cashier of the bank and received that sum also. The checks were charged to the appellee in

Citizens' Savings, Building & Loan Ass'n v. Ruhl.

the regular way upon the books of the bank as checks drawn against the deposit appearing there in his favor. The bank suspended payment May 16th, a balance of the deposit in the sum of $522.45 remaining to the credit of the appellee.

The appellee testified that he did not indorse the order to Schureman to be collected and deposited in the bank to his credit, but that he indorsed it and left it with Schureman, as secretary of the company, to be held by him in that official capacity, because he understood that he could not receive the full amount of the loan then, but could only get the money in installments as needed to discharge bills for labor done and material furnished about the buildings; that Schureman held possession of the warrant or order as appellant's secretary, for the protection of the association, in order that the money should be applied upon the construction of the house, and that he (the appellee) did not authorize a deposit to be made in the bank, or know that it had been made in his name. The association denied that the loan was payable in installments, and contended that it issued to the appellee an order upon its treasurer for the full amount of the loan, and that appellee indorsed the order to the bank, and that its treasurer paid the money to the bank upon the order so indorsed, and that such payment constituted full payment of the money loaned.

Appellant's Brief, Lillard & Williams, Attorneys.

Appellant, as a corporation, could only be bound by its corporate action, and not by the mere conversations of its secretary or other officers. Joliet Electric Light Co. v. Ingalls, 23 Ill. App. 48; Adams v. C. P. Co., 27 Ill. App. 313.

Appellee here was a member of appellant's mutual loan association, and as such had actual notice of the powers of appellant's agents. M. & M. Mut. Ins. Co. v. Gent, 13 Brad. 308.

Appellee's Brief, Welty & Sterling, Attorneys.

The association permitted its secretary to pay out its money where it made loans and it can not now, after hav-

ing received the benefits of his acts, say he had no authority to require this loan to be paid in installments. McDonald v. Chisholm, 131 Ill. 282; Chicago Building Society v. Crowell, 65 Ill. 453.

Mr. Presiding Justice Boggs delivered the opinion of the Court.

The right of the appellee to recover rests upon two propositions of facts which he undertook to establish in the trial court. 1. That the association granted the loan upon condition that it should be paid in partial payments, as needed from time to time in the construction of the building. 2. That to effectuate this purpose he was required to indorse and deliver to the secretary of the association the warrant upon the treasurer thereof in order that the secretary might procure the money from the treasurer and hold it as secretary and pay it out from time to time upon bills for material furnished or work done upon the building.

There is no proof in the record that the association, acting as an organized corporation, attached any condition to the payment of the money to be loaned or required or requested the appellee to indorse or deliver the warrant to its secretary. It is contended, however, that certain of its officials required that the money should be paid only in installments and in payments of bills for work done upon or material furnished for the building, and that the appellee did indorse and deliver the warrant to the secretary upon the requirement of that official and in pursuance of the direction of the president, and that such was the customary and usual course pursued by the association in such cases.

A conversation had by the appellee with the secretary of the association before he became a member of the association, and a conversation with the secretary when the order upon the treasurer was indorsed by the appellee, and other later conversations with the secretary are relied upon to establish the appellee's contention. It appeared from the evidence that when it became apparent to the appellee that he would need to negotiate a loan in order to complete the

building, he called upon the president and secretary to inquire whether the association had funds to loan and to learn whether he could borrow $1,000 on his property. These gentlemen assured him that the association could furnish the money and thought, and so told him, that the lot he owned, with the partially constructed house thereon, would be acceptable as security therefor, but explained that the loan might be granted only on condition that the money should be paid in installments as required in the further construction and completion of the building. The appellee was simply seeking information as to the probability of getting the money from the association and the officials were merely answering his inquiries. He knew that a contract was not then and could not then be consummated. He was not a member of the association and could not for that reason apply for, or be granted a loan, and the officials with whom he was talking had not legal power to contract for the association or to make a loan, even to a member. Corporate contracts are to be made by the board of directors. Cook on Stockholders Vol. 2, Sec. 709. The appellee afterward became a stockholder and when the association offered money to borrowers at a public letting, as the law required it to do, became the successful bidder for a loan of $1,000. The security committee of the association examined the property and reported it satisfactory security for the amount he desired to borrow. The association by its board of directors approved the action of the security committee and granted the loan without restrictions or conditions as to the manner, mode or time of payment of the money to the appellee. The appellee executed his note or obligation for the amount borrowed and a mortgage on his property to secure it, and delivered the instruments properly executed to the secretary, and the president and secretary, pursuant to the action of the board of directors, executed a warrant or order directing the treasurer to pay the sum of $1,000 to the appellee or to his order.

With the delivery of this warrant or order to the appellee, the official duties of the secretary in connection with the

transaction ceased.   It only remained for the appellee to present the order to the treasurer and receive the full sum he had borrowed.   Instead of doing this he indorsed the order at the bank and left it with the banker.   The cashier of the bank to whom the order, by the act of the appellee, became lawfully payable, presented it to the treasurer and collected it in full out of the funds of the association.

It is contended that the secretary led the appellee to believe that the association required him to indorse the order and leave it with the secretary, so that the secretary could draw the money from the treasurer, and hold it in his capacity as secretary, and in that capacity pay it to the appellee from time to time as needed about the building.   The law, by force of which the association existed and by which the appellee became a member of, and interested in its capital stock, required that the funds of the association should be committed to the custody of, and kept by the treasurer, who was required to execute a bond for the safe keeping of the moneys so intrusted to him.   The association was without power to lawfully withdraw its funds from the custody of its treasurer and place them in the hands of another through its secretary, and the president or secretary was wholly without power, real or even apparent, to make such a contract for the association.   The appellee was a member of the association, and as such, charged with notice of its charter and of the powers of the various officers, and with knowledge that the directors alone could contract for the association.

As the secretary was without power to bind the association by any arrangement he might make with the appellee as to the custody of the money, it follows that proof of his statements and admissions tending to establish such a contract ought not to have been admitted in evidence.   It was proven that in some instances loans were paid in installments as work upon the building progressed, but in such cases, separate warrants were drawn upon the treasurer for the amount of each installment as it was to be paid, and there was no proof that the money in any instance had

been drawn out of the treasury and committed to the custody of the secretary with directions to make partial payments from time to time, etc. We think that the payment of the order or warrant to the cashier of the bank upon the order of the appellee constituted full payment upon the part of the association, and that the verdict, upon the evidence upon the part of the appellee alone, excluding that which was not competent, should have been for the appellant. The judgment is therefore reversed and the cause remanded.